STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-92

STATE OF LOUISIANA

VERSUS

DWAYNE DEMOUCHET

**************
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO.  04-1512
HONORABLE GERARD B. WATTIGNY,  DISTRICT JUDGE

**************
SYLVIA R. COOKS
JUDGE
**************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy H. Ezell, Judges.

AFFIRMED.

G. Paul Marx
Louisiana Appellate Project
P.O. Box 82389
Lafayette, Louisiana 70598
(337) 237-2537
COUNSEL FOR APPELLANT:
     Dwayne Demouchet

Jeffrey J. Trosclair
Assistant District Attorney
St. Mary Parish Courthouse
Franklin, Louisiana 70538
(337) 828-4100
COUNSEL FOR APPELLEE:
     State of Louisiana

**COOKS, Judge.**

## STATEMENT OF THE FACTS

Officer Leon Defelice was dispatched in response to an anonymous call regarding a person selling Lortab in the area of Hopkins Street and Ambassador Wes Lemelle Street in New Iberia. Officer Defelice located an individual matching the description given by the informant three blocks from Hopkins Street. The officer exited his unit, approached Demouche and asked him if he had been on the corner of Hopkins and Lemelle. The Defendant answered that he had been in that area. The officer further testified: "I asked him if he had anything on him. After a conversation about him selling Lortab – after I told him why I stopped him and that he fit the description of somebody selling Lortab, I asked him if he had anything on him. And at that point is when he took off running east." Officer Defelice pursued him on foot maintaining a distance of approximately ten to fifteen feet while maintaining a flash light aimed on Demouchet. When the foot chase neared a house and the two men rounded a corner, the officer observed Demouchet reach into the area of his waistband with his left hand and pull out a gun which he threw down near a shed. The Defendant was captured by the officer and handcuffed. He was searched and found to be in possession of a couple of pills in a Lortab prescription bottle[1], five .44 caliber rounds. The .44 caliber pistol discarded by the Defendant was recovered by the officer.

Dwayne Demouchet was charged by bill of information with possession of Schedule II narcotics, illegal carrying of a weapon and possession of a firearm by a convicted felon. The bill of information was amended and the Defendant was tried and convicted on the sole charge of possession of a firearm by a convicted felon, a

_____

[1] The Lortab was prescribed to Demouchet.

1

violation of La.R.S. 14:95.1. He was sentenced to serve fifteen years at hard labor. The State then filed for sentence enhancement under La.R.S. 15:529.1 based on Demouchet's prior convictions for simple robbery and simple burglary.[2] Following a hearing, the Defendant's fifteen years sentence was vacated and Demouchet was sentenced as a habitual offender and ordered to serve twenty-five years at hard labor. Demouchet appeals asserting the officer had no basis to pursue and arrest him after the initial stop and the recovery of the gun could not be used against him. Demouchet also contends his sentence of twenty-five years at hard labor is excessive. For the reasons assigned below, we affirm the conviction and sentence of the Defendant.

## LAW AND DISCUSSION

### *Admissibility of the Gun*

The United States Supreme Court has held an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a "reasonable suspicion" the individual is engaged in illegal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968). In the present case, the Defendant concedes the initial approach by Officer Defelice was constitutional. However, the Defendant asserts there were no facts to support the subsequent arrest and recovery of the gun other than the flight. The Defendant contends the flight cannot be used as the basis for justifying the arrest when probable cause for the arrest and search was not present before the Defendant fled. Since *Terry,* the right of police officers to approach an individual to investigate possible criminal behavior and to perform a protective search for weapons has been expanded. In all cases, however, the officer must be able to "articulate 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Illinois v. Wardlow*, 528 U.S. 119, 128, 120 S.Ct. 673

---

[2] The record indicates the Defendant has also been convicted of unauthorized use of an access card, illegal possession of stolen things, and another count of simple burglary.

(2000), *quoting, United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690 (1981). Flight can be considered in assessing whether there is an objective basis for suspecting criminal behavior. However, an individual's flight from the police must be examined in light of the totality of circumstances and what "'commonsense conclusions' can be drawn respecting the motives behind the flight." *Id.* In *Wardlow*, two officers were part of a four-car caravan converging on a area in Chicago known for heavy narcotics trafficking. One of the officers observed the Defendant standing next to a building holding a bag. The Defendant looked in the direction of the officers and fled. The officers pursued the Defendant and then conducted a protective patdown search for weapons. The Defendant was convicted of unlawful use of a weapon by a convicted felon. The Supreme Court held unprovoked flight when combined other factors, such as the individual's presence in an area of heavy narcotics trafficking, was enough to support a reasonable suspicion that the person is engaged in criminal behavior. The Supreme Court stated:

> Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but its is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
> . . . .
> [U]nprovoked flight is simply not a mere refusal to cooperate. Flight by its very nature, is not 'going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the fact of police questioning.

*Id*. at 124, 125.

In the present case, the officer testified the area he was patrolling was an area known for drug trafficking. He received information that an individual matching the

Defendant's description was selling drugs in the vicinity of Hopkins Street. He observed the Defendant in the area and approached him. The Defendant admitted he had been on Hopkins and Lemelle. When the officer asked him if he had any drugs in his possession, the Defendant fled. The officer gave chase and observed the Defendant reach into pants and discard a gun. In this case, we find given the totality of the circumstances - the anonymous tip regarding an individual matching the description of the Defendant, the nature of the area, and the unprovoked flight in response to questions regarding drug activity - gave rise to a reasonable suspicion that the Defendant was engaging in criminal behavior. We find no error in the decision of the trial court denying the Defendant's motion to suppress the gun.

### *Excessiveness of Sentence*

The Defendant asserts his sentence of twenty-five years at hard labor is excessive. A sentence is constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than the purposeless and needless infliction of pain and suffering. *State v. Lobato,* 603 So.3d 739 (La. 1992). The trial court is given wide discretion in imposing a sentence and absent a manifest abuse of that discretion, a sentence will not be deemed excessive if imposed within statutory limits. *State v. Whatley*, 03-1275 (La.App. 3 Cir. 3/3/04), 867 So.2d 955. "Maximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood,* 02-490, p. 11 (La.App. 5 cir. 3/25/03), 844 So.2d 217, 225. In the present case, the Defendant was convicted of possession of a firearm by a convicted felon and sentenced as an habitual offender. The trial court articulated the reasons for the imposition of the sentence. The trial court considered the Defendant's mature age of thirty-seven years, his criminal record which included six prior felony convictions. The trial court further considered the Defendant's perjured testimony during trial, the

4

false complaint against his probation officer, and the allegation that he coerced his girlfriend into writing an affidavit attesting that she was the owner of the revolver. The trial court considered Demouchet a career criminal in need of correctional treatment and found there was an undue risk that during any period of suspended sentence or probation, he would commit another crime. We do not find the trial court abused its discretion in sentencing the Defendant to twenty-five years at hard labor.

## DECREE

Based on the foregoing review of the record, the conviction and sentence of the Defendant is affirmed.

**AFFIRMED.**